Good morning, Your Honors. May it please the Court, Anthony Bornstein on behalf of Gerald McGuigan. Is he weak, Mr. Bornstein? Yes. Third one. Your Honors, the application of the State of Oregon's procedural rule in this case was untenable, clearly untenable, and therefore cannot support a finding of procedural default in this habeas corpus case. Procedural default only occurs if the petitioner somehow runs afoul of the Oregon rules. Yet on page 20 of the Eppley's brief, they agree that the issue was, quote, In the post-conviction case, acknowledging that the post-conviction court, quote, could have addressed the merits under Oregon precedent permitting a PCR court to treat the pleading expansively. If the court could have reached the merits, Mr. McGuigan did not commit a default. He didn't run afoul of a rule. It's a virtual de facto concession of at least an unclear or inadequate rule. And although the rule is not unclear because it, under 12a of the civil procedural rules, it requires a court to treat pleadings expansively, something a proposition this Court cited itself in Wells v. Moss, the Court nevertheless found that McGuigan had not. And so we have to give deference to the State court's interpretation of its own procedural rules. Unless it is a clearly untenable application of this rule, the holding of the Lopez v. Schreiro case. And it is definitely a clearly untenable ruling. The two precedents cited by the district court in finding procedural default could not possibly be more distinguishable. It cites two cases, Bowen v. Johnson, where the post-conviction court reached out, sua sponte, granted relief on an issue that was nowhere at all in the Petitioner's pleadings. And the Oregon Court of Appeals found that to be an impermissible exercise of. So can we go back to your reliance on Lopez? Yes. In Lopez, we said that we have an exception to deference to the State court's interpretation if the interpretation is clearly untenable and amounts to a subterfuge to avoid Federal review. So how does that really meet the second part of the test? I don't believe that there has to be. And the word subterfuge has not been the subject of any discourse or discussion in subsequent or earlier opinions. So there's some lack of clarity as to what exactly meets the standard of a subterfuge. But it's two – there are two prongs to that. You just addressed the clearly untenable. Right. There's also a second part of that test. Right. And Mr. McGregor raised a constitutional Sixth Amendment claim saying that his counsel violated his constitutional rights to effective assistance of counsel. And the Court invoked without any procedural defense asserted by the State a procedural rule to deny consideration of the merits of his claim with no justifiable, legitimate basis. And that amounts to a subterfuge. It does not have to be an intentional effort by a court. And we're not accusing the court of that to throw out the claim on that basis. But it's a subterfuge. It's an invalid basis to deny review on the merits. And that's what happened in this case. What do you say the merits? I'm sorry? What are the merits that you're talking about? What are the merits? The merits are that McGregor's trial counsel was ineffective when he failed to take any steps toward a judicial remedy by the trial judge when the jurors saw him in shackles during this sexual abuse case. This is not the kind of case where jurors would have believed that the defendant was somehow dangerous and should be shackled, like in a very serious murder case or some kind of violent crime. Was that ever brought to anybody's attention? It wasn't brought to the judge's attention. That's the ineffectiveness of trial counsel. But how is the judge to know something that he's not told? Well, in that sense, it's not judicial error by the criminal trial court. It's ineffective assistance of counsel for not doing anything about it, for just plowing ahead with the trial without advising the court that we've got a serious problem here that we need some judicial attention to. But didn't trial counsel say he made a determination that it was better not to bring that matter to the trial court's attention because he felt the trial was proceeding well? And if there were a mistrial, that it probably would not proceed as well. So how does — doesn't that defeat any ineffective assistance of counsel claim? He offered a strategic justification, and the strategic justification has to be reasonable, has to survive a legitimacy or a reasonable scrutiny. And here's why it's not reasonable. It's a — he makes the decision based on his trial experience, saying the first time around is better because we can stand a better chance of, you know, catching the state by surprise. Generally speaking, second trials don't go so well, and our case was going good. What he doesn't do, though, which is absolutely crucial, is examine the event that took place that hindered the fairness of the trial, that would undercut the normal experience or typical experience that he had of generally the first time around the trial going better. This actually would damage it. The good things that would have taken place, presumably, in the way the testimony was developing and the like were damaged by a jury or jurors seeing McGuigan in handcuffs and who knows what else being paraded through the courthouse in irons, and he didn't take account of that specific error. So he's got to take account of the error that's involved or the event that damages the trial rather than just relying on, you know, history of trial experience where — No, he said this particular trial was going well. If the trial hadn't been going well, perhaps he would have made a different decision, but he said this particular trial was going well, not just generally first trials go well. He added that, but he said this particular trial was going well. Yeah, he said this trial's been going well. So he did take into account the circumstances of how the case had been going up to the juncture of the event that should have put him on notice, but this court and the federal courts have recognized that there's an inherent prejudice in the visual impact that shackles have on the jury, and that was particularly serious in this case. One, because, again, it wasn't the type of crime that jurors would normally expect an accused to be shackled. There was no security-type hearing where a need for the shackling was part of the proceedings. And then Mr. McGuigan testified in a case that hinged on the credibility of the witnesses. And so nowhere in the affidavit or the explanation of trial counsel does he address that the credibility issue. And for that reason, it's an unreasonable justification. And I would ask the Court if I could have the remaining time for rebuttal. May it please the Court. I'm David Thompson representing Superintendent Hall. With respect to the procedural default issue, the question very narrowly is whether the state post-conviction court's interpretation of state procedural law was clearly untenable. What happened in the post-conviction court is, just as Mr. Bornstein said, the state, in fact, fully briefed the issue of effectiveness of counsel with respect to a shackling issue in anticipation that that issue might well be dealt with by the post-conviction court. They didn't automatically raise the procedural default. Pardon me? They didn't raise the procedural default. No, absolutely not. There was no assertion of procedural default on the part of the state. That's fact. And interestingly enough, there was no assertion by the Petitioner in the state post-conviction court on this issue. At the time of the trial. At the time of the trial. The ineffective assistance based on the shackling question. In fact, the post-conviction court, when it addressed that particular issue, said, amazingly, Petitioner basically did not make any noise about this particular issue, apparently taking no interest in pursuing it, even though the state had fully briefed it. And it is against that backdrop that the post-conviction court ultimately said, I don't think this has been pled. There hasn't been any argument from Petitioner about that in this trial. And for that reason, I am going to rely on a state procedural default. That is, that it was not clearly pled in the petition. I have case law to support that position, and I'm going to dispose of it on that basis. And then when that issue goes to the court of appeals, the state once again takes a view consistent with that which it took in the post-conviction court. And that was, perhaps the post-conviction court could have gotten to the issue, but it decided not to. It explained why it decided not to. And the question in front of the Oregon court of appeals was quite simply, was that an abuse of discretion to do what the post-conviction court did? And the Oregon court of appeals, without opinion, affirmed the decision. And so that's how this case tracked in state court. And when it got into federal court, it was simply a question of whether what the state post-conviction court did was clearly and tenable in light of case law that was on the books in Oregon. Does Oregon apply that rule on a regular, consistent basis? I believe it does, Your Honor. I don't do a lot of post-conviction trial work, but I know that that particular principle is asserted by the state in certain cases. What the state did here I think was reasonable in light of the deposition testimony of the petitioner that at least highlighted the question to a certain extent. And as a precautionary matter, the state briefed it. But if, in fact, it has not been pled clearly in the petition, the state routinely takes the position that there is a violation of the state rule requiring that it be clearly pled, and for that reason it ought to be disposed of on procedural grounds. And I think the Court of Appeals in Oregon consistently applies that rule, as does the Supreme Court. And that's what the federal district court was faced with here, had to look at what the state court did and say, is that untenable in light of not only what rules and case law were in place, but what, in fact, happened at the post-conviction trial. Counsel, was there any assertion by the petitioner that this rule has not been consistently applied? I don't believe so. I don't think anywhere along the way has that assertion been made. And that's certainly something that a federal habeas petitioner has available, if, in fact, that is occurring in the state court and that's a way to get around a procedural default ruling. But that issue has never been raised in this case. Unless the court has questions about procedural default, the merits, I think, are adequately covered in the red brief. I'm glad to answer questions about that. But if the court has none, I would simply ask that it's... Could you address briefly opposing counsel's challenge to the trial counsel's strategic decision on this point? Well, I think that amounts to sort of the classic 20-20 hindsight or second guessing of what trial counsel did. Trial counsel was there. We do not have a record that, in detail, tells us exactly what the conversation was between petitioner and his trial counsel with respect to the jurors seeing him in handcuffs. But you have very clear testimony from trial counsel that not only was he an experienced criminal defense attorney, he had also been a prosecutor. He'd been in the courtroom for, I think, over 30 years. He certainly was in a position to assess not only how well a trial was going, but how much effect whatever was told to him about the handcuffing might have on that trial. And it seems to me that counsel made a very reasonable choice in light of the circumstances, certainly one that should not be second-guessed at this stage of the game. And I think that's exactly what Strickland says. This was a reasonable tactical decision on the part of counsel. Thank you. Thank you. Thank you, Your Honors. First of all, it is of no moment whatsoever that it was not specifically discussed at the trial, post-conviction trial, the issue that is, any more than if, say, this was a death penalty case where 20 claims are raised and the parties focus on two or three or four. There's no separate rule for how they treat a non-capital or capital PCR case. It was part of the record, it was part of the pleadings, and it was part of the discovery process. I turn the Court's attention in particular to pages 56 to 64 of the record. If nothing else, this issue was tried by the consent of the parties, and nowhere is that more clear by the fact that the defendant or respondent's own memorandum they submitted is called defendant's trial memorandum. The defendant's trial memorandum is called defendant's trial memorandum. That's submitted at the post-conviction trial. Trial memorandum and tried by the consent. Be decided by the court, though? It has to be decided. Well, no. The claim has to be fairly presented to the court, to the post-conviction court, within the rules. That they consented to trial. And it has to be traceable. Why did the judge have to make a decision? Under established Oregon precedent, it has to be traceable to the pleadings. And the pleadings have to be construed expansively. And Reynolds v. Lampert was the key case we relied upon. The State makes absolutely no effort to distinguish it and says in a parenthetical it upholds a PCR court's treating pleadings expansively, when the rule is that the court must treat pleadings expansively. Was the trial by consent a theory argued to the State court? I don't ‑‑ I believe that the focus in the PCR appeal, which is the first time that would have come up, was that it was raised just as properly raised in the post-conviction petition itself. And one other point about that, though, is that there's a sequence to the Respondent's argument, and that is this. Here's a trial memorandum, page 57 of the excerpt. Here's McGuigan's claims. Here are his allegations, is the word they use. Pages 62 to 63, here is our argument on those. No procedural defense whatsoever. Rather, the petition should be denied on the merits, is what they say. And they submit that to the court with the conclusion, for these reasons, the petition should be denied. There was no assertion whatsoever of a procedural defense and an acknowledgment that it was within ‑‑ and actually an explicit acknowledgment that it was within the ‑‑ Thank you. I think we've got your argument. Thank you. The matter will be submitted. The next case for argument is Cube West Communications Corporation v. City of Portland. Thank you. Thank you.  Did you want to rely on this, sir?
judges: Paez, Rawlinson, Jenkins